PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, *et al.*, | ) ) CASE NO. 1:16cv1946 |
| Plaintiffs, | ) ) |
| v. | ) JUDGE BENITA Y. PEARSON ) ) |
| ELECTROLUX HOME PRODUCTS, INC., | ) ) **MEMORANDUM OF OPINION AND** |
| Defendant. | ) **ORDER** [Resolving ECF No. 5] |

Pending before the Court is Defendant's Motion to Sever pursuant to Fed. R. Civ. P. 21 and to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6). ECF No. 5. Plaintiffs filed a Response, ECF No. 10, and Defendant replied. ECF No. 13. The Court has been advised: having reviewed the record, the parties' briefs and the applicable law, and having had the benefit of argument by counsel. For the reasons set forth below, the Court denies the Motion.

**I. Background**

Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company provided insurance coverage to six property owners at all relevant times. ECF No. 1. at PageID #: 2, ¶ 4. The property owners suffered property losses from dryer fires. *Id.* at PageID #: 2–3, ¶ 4, 11. These dryers were manufactured by Defendant Electrolux Home Products, Inc. *Id.* at PageID #: 3, ¶ 11.

(1:16cv1946)

Plaintiffs, having become subrogated to the property owners' interests, filed a Complaint alleging product liability against Electrolux. *Id.* at PageID #: 1–2, ¶¶ 2–3. Plaintiffs allege that these dryers, known as "ball-hitch clothes dryers," are designed so that fire can easily spread throughout the dryer. The dryer's drum rotates on a fixed axis within the dryer cabinet. *Id.* at PageID #: 3 ¶ 12. There is a void behind the drum known as a "heater pan." *Id*. The dryer's blower motor is encased in non-fire retardant combustible plastic. *Id.* at PageID #: 4, ¶ 13. The lint trap duct is made of the same plastic. *Id*.

Plaintiffs contend that during Electrolux's testing of the ball-hitch design, a dryer lit on fire. *Id.* at PageID #: 4, ¶ 17–18. The fire spread from the dryer cabinet to the blower motor housing and lint trap duct. *Id*. Additionally, before it manufactured the subject dryers, Electrolux had received complaints of similar fires from customers using ball-hitch clothes dryers. *Id.* at PageID #: 5, ¶ 21. Electrolux had also received multiple warranty claims for fires in the same dryers. *Id.* at PageID #: 5, ¶ 22.

In 2002, having received multiple claims concerning ball-hitch defects, Electrolux retained an independent engineer to investigate the ability of lint to ignite within the dryers. *Id. at* PageID #: 5, ¶ 23. In 2005, an Electrolux engineer acknowledged an investigation by the Japanese government that dryer drum lint could travel out of the back of the dryer drum, igniting the contents of the drum or accumulated lint in the dryer's lint screen. *Id.* at PageID #: 5, ¶ 24.

Plaintiffs now contend that its subrogors suffered fires resulting from this design defect, causing personal and property damage. *Id.* at PageID #: 6, ¶ 34. Plaintiffs allege that Defendant knew or should have known of the dangerous and defective design, and Defendant is strictly

(1:16cv1946)

liable to Plaintiffs under the Ohio Products Liability Act.  *Id.* at PageID #: 10, ¶ 47.

## II.  Standard of Review

Under Rule 21, a court can sever any claim against a party.  Fed. R. Civ. P. 21.  Courts typically use Federal Rule of Civil Procedure 20(a)(1)'s preconditions for permissive joinder to evaluate whether severance is appropriate.  Under Rule 20(a)(1), joinder is proper when (1) parties assert a right to relief jointly, severally, or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all plaintiffs will arise in the action.  Fed. R. Civ. P. 20(a)(1); *Lovett v. Lucas*, No. 1:08CV1253, 2009 WL 1362590, at *1 (N.D. Ohio, May 13, 2009).  Courts have also considered whether settlement of the claims or judicial economy would be facilitated; whether prejudice would be avoided if severance were granted; and whether different witnesses and documentary proof are required for separate claims.  *Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d. 901, 940 (M.D. Tenn. 2013); *Reynolds v. Merck Sharp & Dohme Corp.*, No. 3:15CV397, 2016 WL 3090951, at *3 (N.D. Ohio, June 2, 2016).

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the complaint must allege enough facts to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It also must "state a claim that is plausible on its face." *Id.* at 570.  Upon reviewing a motion to dismiss, the Court shall take the pleadings as true and construe them "liberally in favor of the party opposing the motion to dismiss." *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009).  A court may dismiss a claim if the Court finds on the face of

3

(1:16cv1946)

the pleading that "there is an insurmountable bar to relief indicating that the plaintiff does not have a claim[,]" *Ashiegbu v. Purviance*, 76 F. Supp.2d 824, 828 (S.D. Ohio 1998), *aff'd* 194 F.3d 1311 (6th Cir. 1999), *cert. denied*, 529 U.S. 1001 (2000), a bar which may be raised by a statute of limitations defense.

### III. Discussion

First, Defendant argues that Plaintiffs are improperly joined parties pursuant to Fed. R. Civ. P. 20(a)(1). Second, Defendant argues that after severance, the claims must be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(3) for either lack of subject-matter jurisdiction or improper venue. For the following reasons, the Court denies Defendant's Motion to Sever. Defendant's Motions to Dismiss for lack of subject-matter jurisdiction and lack of venue are denied as moot.

#### A. Severance

Defendant argues that Plaintiffs improperly joined multiple claims into one complaint, and asks the Court to sever the claims pursuant to Fed. R. Civ. P. 21. Defendant makes several arguments for severance, each of which will be addressed in turn.

##### i. Arising Out of the Same Transaction and Occurrence

Defendant argues that Plaintiffs' claims should be severed because they arise out of different transactions and occurrences. ECF No. 5 at PageID #: 28–30. Under Sixth Circuit precedent, the words "transaction or occurrence" are to be given "broad and liberal interpretation in order to avoid a multiplicity of suits." *LASA Per L'Industria Del Marmo Soceita Per Azioni of Lasa, Italy v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969) (evaluating a Rule 13 challenge). To

(1:16cv1946)

determine whether claims arise out of the same transaction or occurrence, the Sixth Circuit evaluates whether there is a logical relationship between the claims. *Id.* at 147 (citing *Moore v. N.Y. Cotton Exchange*, 270 U.S. 593, 610 (1926)).

In a case concerning the same Electrolux dryers, the Northern District of Illinois determined that 200 product-liability claims arose out of the same transaction or occurrence. *State Farm Fire and Cas. Co. v. Electrolux Home Products, Inc.*, No. 11C8946, 2012 WL 1287698 (N.D. Ill. Apr. 16, 2012). State Farm pleaded the following facts: "(1) a component behind the drum that accumulates lint in direct proximity to the source of ignition, (2) combustible plastic components that accumulate lint and themselves provide additional fuel sources for fire, and (3) seals that fail to seal the drum from the cabinet and promote the accumulation of lint in direct proximity to the source of ignition." *Id.* at *5. On these facts, the Northern District of Illinois found that the dryers' shared defect satisfied the logical relationship test, and the claims arose out of the same transaction or occurrence. *Id.* at *5–*6 (citing *Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 470 (7th Cir. 2011)).

As evidence of the claims' differences, Defendant highlights that the fires occurred in different places, different dryer models are involved, and installation, use, and maintenance could have varied between users. ECF No. 13 at PageID #: 105. Defendant submits an affidavit from a one of its engineers stating that dryer fires typically arise from user error or improper installation. ECF No. 13-1 at PageID #: 113. Although there might be differences between the dryers' installation and upkeep, Defendant's argument misses the issue. Plaintiffs argue that each of the dryers had the same flawed ball-hitch design, rendering Defendant liable under the Ohio Products

5

(1:16cv1946)

Liability Act.  Ohio Rev. Code. Ann. § 2307.71 *et. seq.*.  All of Plaintiffs' allegations—that the design of the dryer led to a build up of lint, which could easily catch on fire, and that these fires were made worse by the type of plastic used—relate to problems arising out of the manufacture of the dryer.  *See* ECF No. 1.  Plaintiffs do not allege, and Defendant gives no reason to question, that the fires would have occurred only in certain models or under certain conditions.

Defendant also cites several products liability cases in which courts determined that plaintiffs' use of a product was not, on its own, enough to establish that the claims arose from the same transaction or occurrence.  ECF No. 5 at PageID #: 28.  These cases, however, all involved personal injuries caused by defective pharmaceuticals or medical devices.  In product liability cases arising from the same defective consumer products, courts have often allowed claims to be brought together as arising out of the same transaction or occurrence.  *E.g. Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 251 (2d Cir. 1986) (permitting joinder of 119 plaintiffs who suffered harm from a faulty valve stem seal); *Westfield Ins. Vo. v. Interline Brands*, No. CIV 12-6775 JBS/JS, 2013 WL 6816173, at *12 (D.N.J. Dec. 20, 2013) (allowing joinder when plaintiffs alleged that defendants manufactured faulty water supply lines); *In re Stand 'n Seal, Prod. Liab. Litig.*, No. 1:07-MD-1804-TWT, 2009 WL 2224185, at *2 (N.D. Ga. July 21, 2009) ("Although the Plaintiffs purchased Stand 'n Seal at different times and suffered different injuries, their claims rely on the same core allegation: aerosolized Flexipel is hazardous.  This core allegation satisfies the requirement of a series of logically related transactions or occurrences and the requirement of a question of law or fact common to all plaintiffs.").

For these reasons, the Court finds that the claims arise out of the same transaction or

(1:16cv1946)

occurrence.

### ii. Differences in Law and Fact

Defendant contends that Plaintiffs' claims should be severed because they do not share questions of law or fact. Under Rule 20, joinder is permissible when a party's claims arise out of the same transaction or occurrence and "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). The "common question" rule does not require that common questions of law or fact predominate, but instead that the claims involve the same or closely related factual and legal issues. See LASA, 414 F.2d at 147; see also Lee v. Cook County, 635 F.3d 969, 971 (7th Cir. 2011).

According to Defendant, potential differences between the dryers, such as how and where each dryer was installed, the dryers' maintenance, and potential intervening factors, create numerous questions of law and fact. ECF No. 5 at PageID #: 29; ECF No. 13 at PageID #: 104–05. Defendant hypothesizes that because Defendant is not invited to inspect each dryer after a fire, Defendant might have a spoliation arguments against some of the claims, but not others. ECF No. 13 at PageID #: 104. Defendant also argues that Plaintiffs' general claim of strict product liability is not a sufficient basis to permit joinder. ECF No. 5. at PageID #: 29.

Each of Plaintiffs' claims asks the same question: under the Ohio Products Liability Act, did Defendant manufacture a defective product? Under the Ohio Products Liability Act, a product liability claim is one that seeks to recover compensatory damages from a manufacturer for damage that arose from the design of a product. Ohio Rev. Code. Ann. § 2307.71(A)(13).

7

(1:16cv1946)

As discussed above, Plaintiffs' Complaint alleges that these products would have been defective even with perfect use.  All six claims will involve largely the same facts concerning Defendant's design process, testing, and knowledge of the defect.  Therefore, the claims have common questions of law and fact among them sufficient to satisfy Rule 20.

### iii. Judicial Economy and Potential Prejudice

Defendant also argues that severing the claims will promote judicial economy and potential settlement, and avoid any prejudice to Defendant.  Severing claims will "encourage the assessment of each claim on its own individual merit," making it likelier that the parties will settle.  ECF No. 5 at PageID #: 30.  Defendant argues that trying the claims together will cause "the distinct facts of each claim [to] blend together," harming Defendant's ability to defend each claim.  *Id*.  Additionally, Defendant contends that it will have to conduct six different discoveries.  ECF No. 13 at PageID #: 106.

Given the above discussion of the similarities between the claims, joinder of the claims would be the most judicially economic solution.  Because Plaintiffs' claims concern the design of the dryers, there will likely be significant overlap between the discovery regarding each dryer.  Defendant provides little evidence that it would be prejudiced by joinder.  The Court, therefore, declines to find that these factors weigh in favor of severance.

### iv. Summary

For these reasons, the Court denies Defendant's Motion to Sever.  Defendant's Motions to Dismiss for lack of subject-matter jurisdiction and improper venue are denied as moot.

(1:16cv1946)

### B. The Harris Claim

Defendant argues that any claims related to Subrogor Victoria Harris should be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 5 at PageID #: 32.  Defendant argues that because Ohio has a two-year statute of limitations on product liability claims, and Ms. Harris' loss occurred on July 19, 2013 (ECF No. 1 at PageID #: 2), the two-year statute of limitations has run.  *Id*.

Plaintiffs counter that Defendant's argument reveals a misunderstanding of Ohio's statutes of limitations.  ECF No. 10 at PageID #: 86.  Ohio applies at two-year statute of limitations for personal injury and personal property products liability cases, but a four-year statute of limitations for real property damages.  Ohio Rev. Code §§ 2305.09(D); 2305.10.  In reply, Defendant argues that Plaintiffs' Complaint makes clear that Plaintiffs seek damages for product liability, not real property.  ECF No. 13 at PageID #: 107.

Ohio prescribes different limitations periods for statutory and common law product liability claims.  Claims arising under the Ohio Product Liability Act ("OPLA") have a two-year statute of limitations.  Ohio. Rev. Code § 2305.10.  Common law claims not abrogated by the Ohio Product Liability Act apply tort statutes of limitations.  *See Doty v. Fellhauer Elec., Inc.*, 175 Ohio App. 3d 681, 681, 687 (2008) (noting that statutory product liability claims were dismissed as being filed outside the two-year limitations period, but common law product liability claims were governed by the four-year tort statute of limitations); *see also Z.H. v. Abbot Laboratories*, No. 1:14cv176, 2016 WL 5661582, at *10–*12 (N.D. Ohio Sept. 30, 2016) (describing the claims OPLA abrogates).  Tort claims arising out of damage to real property have

9

(1:16cv1946)

a four-year statute of limitations. Ohio Rev. Code § 2305.09(D); *Doty*, 175 Ohio App. at 687.

Plaintiffs state that "Electrolux is strictly liable to Plaintiffs under the Ohio Products Liability Act and the applicable caselaw [sic] of the state of Ohio." ECF No. 1 at PageID #: 10. It is reasonable to interpret this statement as alleging both statutory claims under OPLA and any other claims arising out of Ohio's common law.  While Subrogor Harris' statutory claims are subject to the two-year limitations period, any non-abrogated common law claims apply the four-year limitations period.  Therefore, the Court declines to dismiss Subrogor Harris' claims.

### IV.  Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is denied.

IT IS SO ORDERED.

| | |
|---|---|
|  November 30, 2016 |  */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |